**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| KATHRYN GARNER. individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>LOWE'S HOME CENTERS, LLC, a foreign limited liability company, et al.,<br><br>    Defendants. | Case No.<br><br>NOTICE OF REMOVAL<br><br>*[Removal from King County Superior Court, Case No. 25-2-39662-2 SEA]* |

TO:   The United States District Court for the Western District of Washington;

AND TO:  Kathryn Garner, Plaintiff;

AND TO:  Emery | Reddy, PC, Plaintiff's Counsel of Record.

   PLEASE TAKE NOTICE that Defendant Lowe's Home Centers, LLC ("Defendant") hereby removes the above-captioned matter from the Superior Court of the State of Washington for King County, Case No. 25-2-39662-2 SEA, to the United States District Court for the Western District of Washington at Seattle pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453 on the basis of original federal jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) ("CAFA") and under 28 U.S.C. § 1331.

   In support of its notice, Defendant states the following:

NOTICE OF REMOVAL OF CIVIL ACTION – 1

## I.    STATE COURT ACTION

1.    On December 31, 2025, Plaintiff Kathryn Garner ("Garner") filed a "Class Action Complaint" against Defendant in the Superior Court of the State of Washington for King County under Case No. 25-2-39662-2 SEA (the "State Court Action"). A true and correct copy of Plaintiff's Complaint is attached as **Exhibit A** to the Declaration of Trinh Tran ("Tran Dec.") ¶ 2.

2.    On or about January 8, 2026, Defendant's registered agent for service of process in Washington received, via process server, the Summons; Class Action Complaint; Case Information Cover Sheet and Area Designation; Order Setting Civil Case Schedule. On January 28, 2026, Defendant timely filed its Answer to Plaintiff's Complaint. True and correct copies of all pleadings and papers that have been filed in this matter are attached as **Exhibit B** to the Tran Dec. ¶¶ 3.

3.    Defendant has not filed or received any other pleadings or papers, other than the pleadings described as **Exhibit A** and **B** in this action, prior to filing this Notice of Removal. Tran Dec. ¶¶ 2–3, Exs. A, B.

## II.    TIMELINESS OF REMOVAL

4.    Defendant's Notice of Removal is timely because it is filed within thirty (30) days of service. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347–48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999) (formal service of process, measured from the service date according to state law, is a prerequisite for triggering the 30-day removal period).

5.    Additionally, Defendant has not voluntarily invoked or submitted to the jurisdiction of the King County Superior Court related to the above-captioned matter. Tran Dec. at ¶ 5. And no further proceedings have been had in the State Court Action as of the date of this Notice. *Id.*

## III.    JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

6.    The above-captioned matter is a civil action over which this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), codified as 28 U.S.C. § 1332(d)

NOTICE OF REMOVAL OF CIVIL ACTION – 2

and thus may be removed pursuant to 28 U.S.C. §§ 1441(a) and (c). CAFA provides federal district courts with original jurisdiction to hear putative class actions if (i) the parties are minimally diverse, (ii) the putative class has more than 100 individuals, and (iii) the amount in controversy exceeds $5,000,000 in the aggregate for all putative class members. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1332(d)(6).

**A.      There Is Minimal Diversity For Removal Under CAFA.**

7.      CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one class member must be a citizen of a state different from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d 1087, 1090–91 (9th Cir. 2010) (finding that CAFA broadens diversity jurisdiction for class actions by requiring only minimal diversity).

8.      Here, there is minimal diversity between the parties because Defendant is a citizen of North Carolina and Plaintiff is a citizen of the State of Washington.

**(1)      Defendant Is A Citizen of North Carolina.**

9.      Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). "The Ninth Circuit has not explicitly addressed whether an LLC is an 'unincorporated association' under CAFA, but most courts that have considered the issue have concluded that 28 U.S.C. § 1332(d)(10) applies to all types of non-corporate business entities, including LLCs." *Johnson v. Kadiant LLC*, No. 2:24-cv-01372-DC-CKD, 2024 WL 4616148, at *3 (E.D. Cal. Oct. 30, 2024) (collecting cases). Similarly, a corporation is a citizen in the states of its incorporation and principal place of business. *Id.* § 1332(c)(1). An entity's "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090,

NOTICE OF REMOVAL OF CIVIL ACTION – 3

1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

10.     Defendant is a citizen of the State of North Carolina because it is a limited liability company formed under the laws of North Carolina. Declaration of Cindi Clark ("Clark Dec.") at ¶ 2. Defendant's principal place of business is in Mooresville, North Carolina, because Defendant's sole member is Lowe's Companies, Inc. ("Lowe's Companies"). Lowe's Companies is now and has been since this civil action was commenced, a corporation incorporated in and organized under the laws of North Carolina. Lowe's Companies' headquarters—where its high-level officers direct, control, and coordinate the corporation's activities—is located in Mooresville, North Carolina. *Id.* at ¶ 6. Accordingly, for purposes of CAFA, Defendant is a citizen of North Carolina.

### (2)     Plaintiff Is a Citizen of Washington.

11.     Plaintiff is a citizen of the State of Washington. Complaint at ¶ 4; Clark Dec. ¶¶ 3. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed.") (*citing Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

12.     Here, Plaintiff is a citizen of the State of Washington because her listed home address during her employment with Defendant was in the State of Washington. Clark Dec. at ¶¶ 3. Additionally, the Complaint alleges that Plaintiff resides in Vancouver County,[1] Washington. Complaint at ¶ 4.

13.     Plaintiff's domicile, and intent to remain domiciled in Washington, is further evidenced by the fact that she brought this lawsuit in King County Superior Court. *See generally id.*

### (3)     Doe Defendants' Citizenship Must Be Disregarded.

14.     Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal. Thus, the existence of "DOES 1-20" in the Complaint does not deprive this Court of jurisdiction. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006) (rule applied in CAFA removal).

### B.     There Are At least 100 Putative Class Members.

15.     Defendant opposes both class certification and the merits of Plaintiff's claims. However, for removal purposes only, there are at least 100 putative class members because Plaintiff seeks to certify a class consisting of "[a]ll persons employed by Lowe's Home Centers, LLC, in Washington as non-exempt employees from December 31, 2022, through the date of certification of the Class." Complaint at ¶ 25. Between December 31, 2022 and January 31, 2026,

---

[1] Washington state does not have a Vancouver County. There is, however, a Vancouver city within Clark County.

NOTICE OF REMOVAL OF CIVIL ACTION – 5

Defendant has employed at least 13,840 individuals as hourly paid employees in the State of Washington. Clark Dec. ¶ 4.

**C.      The Amount In Controversy Exceeds the Statutory Minimum.**

16.      Defendant denies liability as to all of Plaintiff's claims, including but not limited to, the appropriateness of this case proceeding as a class action. Nonetheless, Defendant has a reasonable and good faith belief that the amount in controversy, as alleged and pled by Plaintiff, exceeds $5,000,000. Defendant's calculations of the amount in controversy do not constitute an admission of the validity or merit of any of Plaintiff's allegations or claims.

17.      CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual putative class members are aggregated to determine if the amount in controversy surpasses the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction under CAFA to apply "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109–14, 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA further emphasizes that any doubts regarding whether interstate class actions should proceed in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42–43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

18.      Plaintiff's Complaint does not allege the amount in controversy for the putative class Plaintiff purports to represent. Where a complaint does not allege a specific amount in

NOTICE OF REMOVAL OF CIVIL ACTION – 6

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"). In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded… removal of the action is proper on the basis of an amount in controversy asserted… if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the amount specified in section 1332(a)." FEDERAL COURTS JURISDICTION AND VENUE CLARIFICATION ACT OF 2011, Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego Abrego*, 443 F.3d at 683 ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy… we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount").

19. To satisfy this standard, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 927 (9th Cir. 2019)

NOTICE OF REMOVAL OF CIVIL ACTION – 7

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'"). The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz*, 2007 WL 1302504, at *4 (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

### (2) Court Must Assume A 100% Violation Rate Based on Plaintiffs' Class-Wide Allegations.

20. Here, Plaintiff alleges class action claims for violation of the Washington Minimum Wage Act and its accompanying regulations. *See generally* Complaint. If a plaintiff asserts statutory violations, the Court must assume, for purposes of removal, that the violation rate is 100% unless the plaintiff explicitly alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

NOTICE OF REMOVAL OF CIVIL ACTION – 8

Seyfarth Shaw LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)); *see also Wheatley v. MasterBrand Cabinets, LLC*, Case No. EDCV182127JGBSPX, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to all putative class members reasonable"); *Soratorio v. Tesoro Ref. & Mktg. Co., LLC*, No. CV171554MWFRAOX, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate); *Arreola v. The Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

21.    Plaintiff asserts the following allegations in her Complaint:

- Defendant did not establish and maintain a process for Plaintiff and Class members to report and be compensated for instances of when they were required to work over three consecutive hours without a rest period, when they did not receive a rest period of at least 10 minutes, or when they failed to receive a rest period of at least 10 minutes in length for each four hours worked. Complaint ¶ 13.

- Defendant did not compensate Plaintiff and Class members for an additional 10 minutes of work, at their regular rate of pay, for each instance they were required

NOTICE OF REMOVAL OF CIVIL ACTION – 9

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

to work greater than three consecutive hours without or between rest periods, were provided a rest period in a duration of less than 10 minutes, or were not provide [sic] a rest period of at least 10 minutes in duration for each four hours worked. Complaint ¶ 14.

- Defendant failed to establish and maintain a process for Plaintiff and Class members to report and be compensated for instances of when they were not provided a meal period of at least 30 minutes commencing no less than two hours nor more than five hours from beginning of their shift for shifts greater than five hours in duration, when they were not provided a second meal period for shifts greater than 10.5 hours in duration, or when they were otherwise required to work over five consecutive hours without or between meal periods. Complaint at ¶ 19.

- Defendant failed to compensate Plaintiff and Class members with an additional 30 minutes of work, at their regular rate of pay, for each instance of when they were not provided a meal period of at least 30 minutes commencing no less than two hours nor more than five hours from beginning of their shift for shifts greater than five hours in duration, when they were not provided a second meal period for shifts greater than 10.5 hours in duration, or when they were otherwise required to work over five consecutive hours without or between meal periods. Complaint at ¶ 20.

22.    As set forth in more detail below, the amount in controversy arising from Plaintiff's class-wide allegations exceeds $5,000,000.

### (a)    Plaintiff's Claim for Off-The-Clock Work and Overtime.

23.    Plaintiff alleges that she and the putative Class members were not compensated for all hours worked and performed off-the-clock work, leading to unpaid regular and overtime wages. Complaint at ¶¶ 11-12, 14, 20, 23, 38–39, 46–48.

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

24.    Numerous federal district courts have held that estimates of two to three hours of alleged unpaid overtime each week are "conservative" and "entirely reasonable." *See*, e.g., *Molina v. Pacer Cartage, Inc*., 47 F. Supp. 3d 1061, 1066 (S.D. Cal. 2014) (amount in controversy satisfied when "a conservative estimate would be that the class members worked three hours overtime per week"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM), 2019 WL 5677846, at *5 (S.D. Cal. Nov. 1, 2019) ("two hours of unpaid overtime per week is reasonable"); *Stanley v. Distribution Alternatives, Inc*., No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Behrazfar v. Unisys Corp*., 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) ("Defendants' assumptions that each class member worked 2.5 hours of overtime per week" is "conservative").

25.    Here, although Defendant denies Plaintiff's allegations that she and the putative Class members are entitled to any relief, it is reasonable to assume for removal purposes only that Plaintiff is alleging that she and the other putative Class members worked at least two hours of off-the-clock work during the relevant time period.[2]

26.    Between December 31, 2022 and January 31, 2026, Defendant has employed at least 13,840 individuals who worked as hourly-paid employees in the State of Washington.[3] Clark Dec. at ¶ 4. These 13,840 employees had an average rate of hourly pay rate of $21.44 per hour. *Id.* ¶ 8. Accordingly, Plaintiff alleges at least 27,680 total hours of off-the-clock work during the relevant time period [13,840*2]. At an conservative average hourly rate of $21.44, this puts at least $593,459.20 in controversy.

---

[2] This assumption is conservative, as caselaw permits estimates of 1–2 hours of unpaid overtime per *workweek*.
[3] Many of these individuals signed arbitration and class and representative action waiver agreements. Clark Dec. ¶ 4

NOTICE OF REMOVAL OF CIVIL ACTION – 11

27.    Plaintiff also seeks double damages for alleged willful wage withholding. Complaint at ¶¶ 16, 22. Thus, if the alleged off-the-clock damages are doubled, the amount in controversy for such allegedly unpaid hours worked totals $1,186,918.40 ($593,459.20 x 2).

### (b)    Plaintiff's Claims for Meal Periods and Rest Breaks.

28.    Plaintiff's first cause of action seeks class wide recovery for meal periods and rest breaks because Defendant allegedly "violated the provisions of RCW 49.12 and WAC 296-126-092. Complaint at ¶¶ 35–36. In her Complaint, Plaintiff does not limit or specify the number of violations, nor has she provided any evidence suggesting that she or other putative Class members missed fewer than two legally required meal periods and rest breaks per week.

29.    Accordingly, Defendant conservatively assumes—without admitting—that putative Class members may have missed one meal period and one rest break for each workweek worked (approximately one allegedly missed meal period and one allegedly missed rest break every five shifts). Indeed, district courts have consistently upheld comparable and even higher assumptions of meal period and rest break violations as plausible for determining the amount in controversy, where the Complaint does not limit the amount of violations alleged in the Complaint. *See*, *e.g.*, *Wheatley*, 2019 WL 688209, at \*6 (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we (sic) finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, No. CV 17-02627 SJO (EX), 2017 WL 2985395, at \*6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30-minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class

NOTICE OF REMOVAL OF CIVIL ACTION – 12

members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . .."); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-CJC, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding Defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman*, 730 F. Supp. 2d at 1150 ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week). *Accord Arias*, 926 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

30.    Accordingly, the following calculations are in controversy:

- **Meal Periods.** Although Defendant denies that it failed to provide Plaintiff or any of the putative Class members with meal periods, Defendant assumes, for removal purposes only, at least one meal period violation for every twenty shifts for each putative Class member (approximately once every four weeks). Based on this calculation, the amount in controversy for Plaintiff's meal period claim would be $1,523,890.34 [$21.44/hour * 30 minutes * (2,843,079 shifts divided by 20)]. Additionally, Plaintiff seeks double damages for alleged willful wage withholding. Complaint at ¶¶ 16, 22. Thus, if alleged meal period damages are doubled, the amount in controversy for meal periods totals $3,047,780.69 [$1,523,890.34 * 2].

- **Rest Breaks.** Although Defendant denies that it failed to provide Plaintiff or any of the putative Class members rest periods, Defendant assumes, for removal purposes only, that Plaintiff alleges at least one rest break violation for every twenty shifts for each putative Class member (approximately once every four weeks). Based on this calculation, the amount in

NOTICE OF REMOVAL OF CIVIL ACTION – 13

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

controversy for Plaintiff's rest period claim would be $507,963.45 [$21.44/hour * 10 minutes * (2,843,079 shifts divided by 20). Additionally, Plaintiff seeks double damages for alleged willful wage withholding. Complaint at ¶¶ 16 and 22. Thus, if the alleged rest break damages are doubled, the amount in controversy for rest breaks totals $1,015,926.90 [$507,963.45 * 2].

31.    Accordingly, Plaintiff alleges the following amounts in controversy:

| Claim | Amount in Controversy (before alleged exemplary damages) | Amount in Controversy (including alleged exemplary damages) |
|---|---|---|
| Claim for Off-The-Clock Work | $593,459.20 | $1,186,918.40 |
| Claim for Meal Periods | $1,523,890.34 | $3,047,780.69 |
| Claim for Rest Periods | $507,963.45 | $1,015,926.90 |
| **Total** | | $5,250,625.98 |

**(c)    Plaintiff's Claim for Attorneys' Fees.**

32.    Plaintiff also seeks attorneys' fees. Complaint at ¶ 59(d). Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy."); *Longmire v. HMS Host USA, Inc.*, No. 12CV2203 AJB DHB, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

NOTICE OF REMOVAL OF CIVIL ACTION – 14

33.    The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."). Indeed, the Ninth Circuit recently confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

34.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See*, *e.g.*, *Wheatley*, 2019 WL 688209, at *6 (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, No. 5:18-CV-01551-JLS-KK, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]he 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was

NOTICE OF REMOVAL OF CIVIL ACTION – 15

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintus Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

35.    Even applying the conservative benchmark of twenty-five percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would amount to $1,312,656.50 in this case [$5,250.625.98 * 0.25].

**(3)    Summary of Amount In controversy.**

36.    Although Defendant denies Plaintiff's allegations that he or any of the putative Class members are entitled to any relief, based on Plaintiff's allegations and Prayer for Relief, and a conservative estimate based on those allegations, the total amount in controversy exceeds the $5,000,000 threshold set forth under 28 U.S.C. section 1332(d)(2) for removal jurisdiction.

| Claim | Amount in Controversy (including alleged exemplary damages) |
|---|---|
| Claim for Off-The-Clock Work | $1,186,918.40 |
| Claim for Meal Periods | $3,047,780.69 |
| Claim for Rest Periods | $1,015,926.90 |
| Attorneys' Fees | $1,312,656.50 |
| **Total** | $6,563,282.48 |

37.    Accordingly, because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

NOTICE OF REMOVAL OF CIVIL ACTION – 16

38.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.     DIVERSITY JURISDICTION

39.     The above-captioned matter is also a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a) and thus may be removed pursuant to 28 U.S.C. §§ 1441(a) and (c). Under 28 U.S.C. § 1332(a), federal district courts have "original jurisdiction" over cases between citizens of different states (i.e., the parties have "complete diversity") and the amount in controversy exceeds $75,000. For the Court to have jurisdiction under § 1332(a), there must be complete diversity between the parties. 28 U.S.C. § 1332(a)(1); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 68 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996). Both requirements are met here.

**A.     Plaintiff's Citizenship.**

40.     First, there is complete diversity. As described above, Plaintiff is a citizen of Washington because the Complaint alleges that she resides in "Vancouver County,"[4] Washington. *See* Complaint at ¶ 4.

**B.     Defendant's Citizenship.**

41.     Defendant, on the other hand, is a citizen of the State of North Carolina. For purposes of diversity jurisdiction, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

42.     Here, Defendant is a limited liability company whose sole member is Lowe's Companies. Clark Dec. ¶ 2. The "principal place of business" for purposes of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities … [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of

---

[4] Washington state does not have a Vancouver County. There is, however, a Vancouver city within Clark County.

NOTICE OF REMOVAL OF CIVIL ACTION – 17

direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" *See Hertz Corp.*, 559 U.S. at 92–93.

43.    Lowe's Companies, Inc. is, and was at the time this civil action was initiated, a corporation organized under the laws of North Carolina. Clark Dec. ¶ 2. The majority of Lowe's Companies' executive and administrative functions are conducted at its headquarters in North Carolina. *Id.* All of Lowe's Companies' executives have offices at, and regularly work from, these headquarters. *Id.* The functions performed at Lowe's Companies' North Carolina headquarters include the activities of its high-level management team and the majority of its administrative functions, including corporate finance and accounting. *Id.* Accordingly, Lowe's Companies is a citizen of North Carolina, not Washington.

44.    Since Lowe's Companies is a citizen of North Carolina, Defendant is also a citizen of the State of North Carolina, not Washington. Thus, the requisite diversity of citizenship exists as to Defendant. *See* 28 U.S.C. § 1332(c)(1).

**C.    Amount in Controversy.**

45.    While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement for diversity jurisdiction is satisfied because "it is 'more likely than not'" that the amount exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1332(a)(1); *Abrego Abrego*, 443 F.3d 676, 683 (9th Cir. 2006).

46.    Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. *Abrego Abrego*, 443 F.3d at 683; *Guglielmino* , 506 F.3d at 701. Further, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117 (finding that a court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may set forth underlying facts supporting its assertion that the amount

NOTICE OF REMOVAL OF CIVIL ACTION – 18

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

in controversy exceeds the jurisdictional threshold. *Id.*; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

47.    As the Supreme Court has explained, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 87 ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). A defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar*, 687 F. Supp. 2d at 1004 (quoting *Korn*, 536 F. Supp. 2d at 1204–05); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is "what is in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

48.    In determining whether a complaint meets the $75,000 threshold under 28 U.S.C. § 1332(a), the Court must consider a plaintiff's alleged aggregate damages, special damages, punitive damages, and attorneys' fees. *See Galt G/S*, 142 F.3d at 1156 (claims for statutory attorneys' fees may be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mut. Ben. Health & Acc. Ass'n,* 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account in determining amount in controversy where recoverable under state law); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006) ("amount in controversy" includes the amount of damages in dispute).

49.    The calculations supporting the amount in controversy are based on Plaintiff's potential recovery pursuant to the claims alleged in the Complaint, assuming, without any admission, the truth of any of the allegations, and assuming liability (which Defendant disputes) based on Plaintiff's theory of recovery. *Kroske*, 432 F. 3d at 980.

NOTICE OF REMOVAL OF CIVIL ACTION – 19

50.     Here, the amount in controversy exceeds $75,000 because Plaintiff seeks, on behalf of herself and members of the class, "compensatory damages, including unpaid wages, in amounts to be proven at trial." Complaint at ¶¶ 59(b). She also seeks, among other things, exemplary damages, attorneys' fees and costs, and additional or further relief that the Court deems equitable, appropriate, and just. Complaint at ¶¶ 59(c), (i).

51.     Future attorneys' fees may be included in the amount in controversy. *See Chavez*, F.3d 413 at 414–15. To meet its burden of establishing the amount in controversy by a preponderance of the evidence, *see Fritsch*, 899 F.3d at 793 (9th Cir. 2018), the removing party may estimate "anticipated but unaccrued" attorneys' fees at the time of removal. *See Gonzales v. CarMax Auto Superstores LLC*, 840 F.3d 644, 649 (9th Cir. 2016). To do so, the removing party may estimate the plaintiff's counsel's recovery, e.g., billing rate and the amount of time required by the case. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2019 WL 957578, at *7–8 (N.D. Cal. Feb. 27, 2019) (citing *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000)). "The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience." *Adkins v. J.B. Hunt Trans., Inc.*, 293 F. Supp. 3d 1140, 1147 (E.D. Cal. 2018) (quotation omitted).

52.     Defendant has a good faith belief that if Plaintiff is successful in this action, she will seek an attorneys' fee award in excess of $75,000. Specifically, the Ninth Circuit estimates employment cases at 100 or more hours. *Adkins*, 293 F. Supp. 3d at 1148; *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC, 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014); *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB AJWX, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015). This estimate is also consistent with the 113.4 hours that Plaintiff's counsel reported in a recent employment case. *See* Tran Dec. at **Exhibit D**. In that case, Plaintiff's counsel reported that his hourly billing rate was $725, and that he had billed more than $82,000 in attorneys' fees. He also reported that the total amount of attorneys' fees billed for all timekeepers at his firm was $125,852.50. Thus, based on the conservative estimate of 110 hours multiplied by

NOTICE OF REMOVAL OF CIVIL ACTION – 20

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

Plaintiff's counsel's hourly rate of $725, Defendant believes in good faith that Plaintiff's attorneys' fees will exceed $75,000, alone.

53.     Additionally, Defendant anticipates that Plaintiff will seek a class representative service award. In recent class actions, Plaintiff's counsel has sought and received a $20,000 class representative service award for the named plaintiff. Tran Dec. at **Exhibit C**.

54.     In sum, Plaintiff alleges over $75,000 in damages when accounting for an unspecified compensatory damages for unpaid meal periods and rest breaks, attorneys' fees (more than $75,000), and a service award to Plaintiff (from $5,000 to $20,000).

### IV.     VENUE AND INTRADISTRICT ASSIGNMENT

55.     Venue is proper in the United States District Court for the Western District of Washington at Seattle because this is the district court of the United States embracing the place where the action is pending. 28 U.S.C. § 1441(a).

### IV.     COMPLIANCE WITH REMOVAL PROCEDURES

56.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Superior Court of the State of Washington for King County as **Exhibit 1** to Defendant's Notice to State Court of Removal to Federal Court.

57.     Because there are no other parties to the State Court Action other than Plaintiff and Defendant, the removal does not require the consent of any other party.

58.     Pursuant to Local Civil Rule 101(b), Defendant contemporaneously files with this Notice of Removal copies of all additional records and proceedings in the State Court Action with the Clerk, if any, together with a Verification of State Court Records certifying that the copies are true and correct.

WHEREFORE, Defendant respectfully requests that the pending case against it in the Superior Court of the State of Washington for King County be removed to this Court.

NOTICE OF REMOVAL OF CIVIL ACTION – 21

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

Respectfully submitted this February 9, 2026.

SEYFARTH SHAW LLP

By:  */s/Matthew Kelly*
Matthew Kelly, WSBA #48050

By:  */s/Trinh T. Tran*
Trinh T. Tran, WSBA #54974

999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041
Phone:    (206) 393-4060
Email:    mrkelly@seyfarth.com
Email:    trtran@seyfarth.com

*Counsel for Defendant Lowe's Home Centers, LLC.*

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I have caused a true and correct copy of the foregoing to be served upon the following, via the method(s) indicated below:

Timothy W. Emery, WSBA No 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
Hannah M. Hamley, WSBA No. 59020
Emery Reddy, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
P: (206) 442-9106
emeryt@emeryreddy.com
reddyp@emeryreddy.com
paul@emeryreddy.com
hannah@emeryreddy.com

☐ via U.S. Mail, Postage Prepaid
☐ via Messenger Service
☒ via USDC Western WA CM/ECF
☐ via Email:

*Attorneys for Plaintiff*

DATED this 9th day of February, 2026, at Seattle, Washington.

SEYFARTH SHAW LLP

By:  */s/Matthew Kelly*
　　　Matthew Kelly, WSBA No. 48050

*Counsel for Defendant Lowe's Home Centers, LLC.*

NOTICE OF REMOVAL OF CIVIL ACTION – 23